## In re FURNITURE CORPORATION OF AMERICA, Debtor.

### Bankruptcy No. 82–00584–BKC–TCB.

United States Bankruptcy Court,
S.D. Florida.

Oct. 13, 1983.

Timothy Norris, Miami, Fla., for debtor.

Jerry Markowitz, Miami, Fla., for creditor.

## ORDER ON EXAMINATION OF FEES PAID TO DEBTOR'S FORMER ATTORNEY

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor's chapter 11 plan was confirmed on June 18, 1982. The plan has never been consummated and the debtor has replaced its attorney. On August 30, 1983, the debtor moved under § 329(b) for review of a fee paid the debtor's former attorney, Martin Sandler. Sandler has responded. The matter was heard on September 19.

Sandler's first response is that the fee is not reviewable because payment was made to him by a third party, Budget Furniture Rentals, Inc., who also made the debtor's plan feasible by agreeing to purchase the debtor's stock (issued to satisfy creditors' claims) from those creditors who preferred cash to the stock.

I disagree. Although former B.R. 220 which superseded § 60(d) of the Act restricted review of attorney's fees to "any payment ... by the bankrupt", *e.g., In re O'Bannon* 484 F.2d 864 (10th Cir.1973), § 329 is controlling in this case and it is clear from the provisions of that section that any payment made to an attorney representing a debtor in connection with a bankruptcy proceeding is reviewable by the court notwithstanding the source of payment and that the source of payment is relevant only with respect to who will get the return of an excessive payment.

Although the recently adopted B.R. 2017 contains provisions identical to former B.R. 220 and therefore suggests that the scope of review is unchanged, the bankruptcy rules no longer supersede the statute. 28 U.S.C. § 2075. To the extent, therefore, that B.R. 2017 appears to restrict the scope of review under § 329, the rule must yield to the statute and must be disregarded.

In this instance, Sandler was paid $9,000 by Budget shortly after confirmation. He subsequently paid himself an additional $9,000 from funds taken from an escrow account in the name of the debtor and deposited into firm's trust account. The escrow account was established for the purpose of consummating the debtor's plan by paying cash dividends and by funding the purchase of stock from creditors who wished to sell stock to Budget. However, the plan was not consummated and when Sandler was discharged by the debtor, he remitted to the debtor on May 31, 1983, $63,269.86, the balance remaining from the escrow account ($72,269.86) after he had paid himself $9,000.

Sandler has never made an application for either payment nor was there any disclosure made in connection with the plan as is required by § 329(a) and § 1129(a)(4). I am satisfied that Sandler's failure in these respects was due to his reliance upon the prior rule and his failure to note that the enactment of the Code in 1978 changed that rule. The oversight is understandable in light of the provisions in the present B.R. 2017.

I shall treat Sandler's Response and his Affidavit as an application for approval of the foregoing payments. A further hearing will be held on Monday, October 24, 1983, at 9:30 a.m. in Courtroom 1406, 51 S.W. 1 Avenue, Miami, Florida, to consider this application on its merits and Sandler is directed to file the required disclosure statements and to give notice of the hearing to Budget, the debtor and any other party that might be affected by the disposition of this review.

DONE and ORDERED at Miami, Florida, this 13th day of October, 1983.